## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| National Security Archive, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:86-CV-3454 (JPG) |
| | ) | |
| U.S. Department of Defense, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF ITS
## REQUEST FOR ATTORNEYS' FEES AND COSTS

### BACKGROUND

By letter dated September 25, 1985, the National Security Archive (the

"Archive") filed a Freedom of Information Act ("FOIA") request with the Office of the

Joints Chiefs of Staff within the Department of Defense ("DOD") for eight records.[1]  The

request for the records was accompanied by a request to be accorded status as a

representative of the news media or as an educational institution.  Complaint ¶ 14.  Under

the FOIA, requesters who are accorded such status are not required to pay search and

review fees under FOIA because those categories of requesters serve FOIA's basic

purpose of disseminating information to the public.  The Archive's request for preferred

fee status was based on the Archive's status as a non-profit institution and its plan to

analyze and disseminate the records to journalists, researchers, and the general public.

*Id.*

---

[1]     The Archive incorporates by reference its entire Memorandum in Support of Motion for
Attorneys' Fees and Costs and its Reply to Defendant's Opposition to Plaintiff's Motion for Attorneys'
Fees and Costs.  It restates certain facts that are relevant to the discussion in this Supplemental
Memorandum of Law.

By letter dated October 25, 1985, the government acknowledged the FOIA request and said it would defer making a fee status decision until the search for records was completed.  Complaint ¶ 15.  By letter dated November 26, 1985, however, the government asked for additional information in order to render its fee status decision.  Complaint ¶ 16.  Thereafter, by letter dated May 8, 1986, the government notified the Archive that it had determined that the Archive was not eligible for preferred fee status and that this determination "is effective for all components of the Department of Defense."  Complaint ¶ 17.

By letter dated May 30, 1986, the government notified the Archive that the documents were successfully located and would be made available for the Archive's inspection in a DOD public reading room. Complaint ¶ 18.  The May 30 letter stated that all search costs would be waived.  *Id*.  In response to an inquiry from the National Security Archive seeking clarification, the government sent a June 18, 1986 letter that reaffirmed the "department-wide determination" that the Archive is ineligible for preferred fee status.  Complaint ¶  20.  The government's June 18 letter requested information about the Archive's tax status, its relationship with the institution in which it was then housed, the identity and qualifications of its researchers, the researchers' publication histories, organizational documents, the fees charged for Archive services, and dissemination arrangements.  *Id*.

By letter dated August 13, 1986 the Archive responded with what it believed constituted all the information requested by the government.  Complaint ¶ 21.  By letter dated October 29, 1986, more than a year after the underlying FOIA request was made, the government notified the Archive that a determination would not be made until such

time as the Archive provided still more information on the commercial aspects of the

Archive, the Fund for Peace and the Brookings Institution. Complaint ¶ 23.  By letter

dated November 14, 1986, the Archive provided a lengthy memorandum in response to

the October 29, 1986 letter.  Complaint ¶ 24.

In the midst of the Archive's fee dispute with DOD, on or about March 1, 1986,

the Department of Justice published an article in its newsletter for government FOIA and

Privacy Act officers concerning the Archive in which it criticized the Archive as a

"surrogate" requester.  The article indicated that Department of Justice's Office of

Information and Privacy was implementing a policy of interagency coordination of all

FOIA requests filed by the Archive and that agency's should contact the DOJ if they

received a FOIA request with a fee status request t filed by the Archive.  Complaint ¶¶

30-31.

On or about August 13, 1986, then-Assistant Attorney General (AG) Stephen

Markman of the Office of Legal Policy delivered a speech to the Government Executive

Institute's Freedom of Information Symposium entitled "Unintended Uses of the FOIA."

In this speech, Assistant AG Markman singled out the Archive as a commercial

enterprise that was abusing the FOIA for its own economic gain.  Complaint ¶¶ 33-34.

The result of these efforts by the Department of Justice was dramatic.  The record

in this case demonstrates that other federal agencies began to deny the Archive's fee

waiver requests; all of these denials were accompanied by requests for information

substantially similar to that solicited by the DOD in its letters to the Archive.  The record

in this case shows that the following agencies rejected waivers of fees and solicited more

information: FEMA (by letter dated September 10, 1986); the State Department (by letter

dated September 12, 1986); and the Bureau of Alcohol Tobacco and Firearms (by letter dated September 16, 1986).  Complaint ¶ 35.

Then on November 12, 1986 Assistant AG Markman issued a memorandum to the heads of all federal agencies instructing them to not grant fee waivers to libraries and repositories as a matter of course.  Complaint ¶ 36.

In light of this barrage of attack on the Archive's motivation and entitlement to preferred fee status, and having exhausted its administrative remedies, the Archive filed suit in the United States District Court for the District of Columbia on December 17, 1986.  The suit alleged that the DOD denial of preferred fee status was part of an orchestrated policy to deny the Archive's fee requests in order to close down the Archive just as it was opening for business.  The Archive argued in its filings that the important public service provided by the Archive was the interest that Congress had in mind when it strengthened FOIA in 1974 to provide for fee waivers, and that the Archive qualified for a waiver.

The district court awarded summary judgment to the government, holding that the Archive was not statutorily eligible for waiver of fees.  On appeal, a unanimous panel of the United States Court of Appeals for the District of Columbia, after canvassing congressional debate and reports surrounding the FOIA fee waiver amendments, held that the Archive was a representative of the news media entitled to preferential fee status. *National Security Archive v. U.S. Dep't of Defense,* 880 F.2d 1381 (D.C. Cir. 1989). Examining the Archive's "plan to act, in essence, as a publisher, both in print and other media," *id.* at 1386, the appeals court concluded that Congress intended the Archive to be treated as a news media representative under the fee waiver section of FOIA.  *Id.*  The

D.C. Circuit rejected Defendant's request for rehearing en banc.  The Supreme Court denied the government's petition for writ of certiorari in *U.S. Dep't of Defense v. National Security Archive,* 494 U.S. 1029 (1990).  After three years of protracted litigation, the Archive had a final ruling that it was entitled to news media status under the FOIA.

On May 12, 1990, the Archive filed its motion for attorneys' fees and costs pursuant to 5 U.S.C. §552(a)(4)(E).  The government opposed this motion and the Archive replied in support of its motion.  It is that motion that currently is before the Court.

## ARGUMENT

### 1.  Standard of Review

The FOIA provides that the district court, in its discretion, may "assess against the United States reasonable attorney's fees and other litigation costs reasonably incurred in any case … in which the complainant has substantially prevailed."  5 U.S.C. §552(a)(4)(E).  Determining whether an award of attorneys' fees is appropriate under the fee shifting provision of FOIA requires an inquiry into (1) whether the plaintiff is eligible for an award of attorneys' fees; and (2) if so, whether the plaintiff is entitled to such fees. *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d 13, 17 (D.D.C. 2004).

Eligibility requires a finding that the plaintiff substantially prevailed, in that there is a "judicially sanctioned change in the legal relationship of the parties."  *Buckhannon Bd. & Care Home Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *see also Oil, Chem. & Atomic Workers Int'l Union v. U.S. Dep't of Energy*, 288 F.3d 452 (D.C. Cir. 2002).

When determining whether a substantially prevailing party is entitled to attorneys' fees, courts consider: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government had a reasonable basis for withholding the requested information. *Burka v. U.S. Dep't of Health & Human Servs.*, 142 F.3d 1286, 1288 (D.C. Cir. 1998). No single one of these factors is dispositive. The court is to weigh all these factors and make a decision whether to award the fees in its sound discretion. *Piper v. U.S. Dep't of Justice*, 339 F. Supp. 2d at 20 (*citing Williams v. FBI*, 17 F. Supp. 2d 6, 8 (D.D.C. 1997)).

**2. The Archive is Eligible for an Award of Attorneys' Fees.**

There is no dispute that the Archive is eligible for an award of attorneys' fees. *See* Def.'s Mem. in Opp'n to Pl.'s Motion at 2 fn. 1 (conceding eligibility to attorneys' fees). As the record demonstrates, the DOD had located the requested records but decided to withhold the documents on the basis of denial of the Archive's fee status request. Only by virtue of this litigation was the Archive able to obtain the requested records.

**3. The Archive Is Entitled To An Award Of Attorneys' fees.**

  **a. The Public Benefit of the Government's Recognition of the Archive as a Representative of the News Media is Immense.**

The government does not dispute that the public benefited from this lawsuit. *See* Def.'s Opp'n to Pl.'s Motion at 3 (challenging only commercial benefit and reasonableness of agency withholding prongs of test). Nevertheless, because the four-part entitlement test is a balancing test, the strength of the Plaintiff's showing on this prong of the test merits some discussion. "The public-benefit prong speaks for an award

of attorneys' fees where the complainant's victory is likely to add to the fund of information that citizens may use in making vital political choices." *Cotton v. Heyman*, 63 F.3d 1115, 1120 (D.C. Cir. 1995) (internal punctuation and citation removed).  Here, the government's recognition of the Archive as a representative of the news media is of widespread public benefit because it enables the release of valuable information that would not otherwise have been made available to the public.  The Archive is informing the public about the formulation of foreign, intelligence, defense, and national security policies, which is critical information to facilitate public participation in a democratic government.

At the time of the decision in this case, the Archive already had published a number of books and document sets on important issues in United States foreign policy, with additional publication in the process of completion.  Mem. in Supp. Of Motion at 2-3.  Since the ruling, the continued publishing activities of the Archive have magnified the beneficial impact of the decision.  In the years since the decision was reached, the Archive has published 23 document sets which are disseminated on microfiche and in digital form , over 140 electronic briefing books, more than 20 books, and numerous articles on issues of concern to the public.  *See* http://www.gwu.edu/~nsarchiv/publications/index.html.  These publications reach a widespread audience across the United States, spanning academic, journalistic, and public audiences.

Moreover, the Archive's publishing activities – both at the time of the decision in this case and since that time – have served FOIA's core purpose of informing the public about government operations and activities.  Thus, the public benefit "derived from this

case" to unblock the government's effort to stymie the Archive's use of the FOIA have

been exactly what Congress intended: permitting greater public understanding of and

participation in the policies of the nation.  *Cf. Chesapeake Bay Found'n v. U.S. Dep't of*

*Agriculture*, 108 F.3d 375, 377 (D.C. Cir. 1997) (internal citations and punctuation

omitted) (finding no public benefit where documents would merely help plaintiff

determine whether pesticides caused public safety risk; the litigation merely resulted in

the same solution that the USDA proposed before the lawsuit was filed).  These activities

would not have been possible if the Archive were not permitted to request records under

FOIA as a representative of the news media.

There is no doubt moreover, that the materials obtained by the Archive through

FOIA and assembled into document sets and books would not be available to the public

were it not for the Archive's efforts.  Not only do the Archive analysts and fellows have

substantial subject matter expertise, but the Archive is in the unique position of being

able to wait – often years – for responses to its FOIA requests, and to follow up on its

requests in a systematic manner.

Further, as noted in the Archive's initial memorandum in support of its fee

request, Mem. in Supp. of Motion at 10, the impact of the decision has helped other

FOIA requesters by clarifying the proper application of the news media and education

institution requester categories.  In fact, the judicial decision recognizing the Archive's

status as a member of the news media has been cited in over 20 district and circuit court

cases according to research conducted on LEXIS/NEXIS Academic Universe as of

February 25, 2005.  Thus, an award of attorneys' fees here would serve one of the

purposes of the fee shifting provision, i.e. it would "encourage private individuals to

litigate FOIA cases when there is no economic incentive to do so and when the public

will benefit from the litigation." *Weatherhead v. United States of America*, 112 F. Supp.

2d 1058, 1067 (D. Wash. 2000).  Thus, the public benefit prong of the test strongly

supports an award of attorneys' fees.

> **b.  The Archive's Interest in the Records Was Not Commercial In Nature.**

Courts often consider the second and third prongs of the fee entitlement test

together.  *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, 1095 (D.C. Cir. 1992).

Here, both factors militate in favor of a fee award.

First, as defendant has conceded, the Archive's interest in this litigation is to

promote the use of the FOIA for scholarly and journalistic pursuits.  *See* Def.'s Opp'n to

Pl.'s Motion at 3 (challenging only commercial benefit and reasonableness of agency

withholding prongs of test).  In fact, the Archive's interest in the requested records was

patently for a scholarly, journalistic endeavor.  The Archive synthesizes a number of

documents with other research into a format that makes it possible for the public to

understand key events in U.S. history and government policy.  The decision recognizing

the Archive's news media status specifically explained:

> A representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience.

*National Security Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir.

1989).  The Court went on to "conclude [based on this standard] that the Archive is a

representative of the news media."  *Id*.  Congress intended that news organizations

"should not be considered commercial interests," *Tax Analysts v. U.S Dep't of Justice*,

965 F.3d 1092, 1096 (D.C. Cir. 1992) (citation omitted).  Therefore, courts will "generally award fees if the complainant's interest in the information [is] . . . journalistic." *Id*.

Second, the fact that this case alleged the improper charging of fees under FOIA does not render the case in plaintiff's commercial interest.  Agencies have used fees at times to obstruct requesters seeking access to government information.  It is that sort of obstructive practice that the Archive sought to challenge in order to make the FOIA serve its intended public purpose.  *See* Pl.'s Mem. in Supp. of Motion at 3-8.  The fact that the Archive charges a fee for its publications does not change the analysis of this factor. "Congress did not intend for scholars (or journalists and public interest groups) to forego compensation when acting within the scope of their professional roles."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 35 (D.C. Cir. 1998).

Moreover, the Archive is not a commercial publisher seeking to advance a commercial interest that would litigate regardless of whether it were accorded news media status.  Unlike the publisher in *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d 1092, which sought a means of getting information that already was available in the public domain in a faster, more efficient way (presumably so that it could offer its readers the premium of quick information about tax decisions), the Archive's motivation was not private and commercial.  FOIA is essentially the only way the Archive can get the information it sought in this litigation and it is not simply seeking a faster, easier route to the information.

Further, the vast majority of the Archive's budget comes from grants from charitable foundations seeking to promote research, analysis and dissemination of

information on matters of public interest, not income from its publications.  The Archive

employs a staff of over 25 researchers, analysts, and fellows, many with significant

subject matter expertise.  The Archive could not publish and disseminate its journalistic,

scholarly materials if it were repeatedly forced to resort to costly litigation in order to

enforce its statutory rights.

Therefore, the second and third prongs of the entitlement test strongly militate in

favor of a fee award.

### c.   The Government Sought To Deny The Archive News Media Status In Order To Discourage Its FOIA Requests And Thus The Department's Actions Had No Reasonable Basis In Law.

The final factor to consider in the attorneys' fees entitlement analysis is whether

the government agency had a reasonable basis in law for withholding the requested

documents.  This factor seeks to discourage obdurate behavior on the part of the

government and to weed out those cases where the government was recalcitrant in its

opposition to plaintiff's FOIA request.  *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C.

Cir. 1977).  As the D.C. Circuit has explained, an award of fees may be appropriate in

cases in which the "government was recalcitrant in its opposition to a valid claim or

otherwise engaged in obdurate behavior."  *Tax Analysts v. U.S. Dep't of Justice*, 965 F.2d

at 1097.

Here, the entire record suggests that the fee dispute was pursued by the

government in order to discourage the plaintiff from making FOIA requests.  For

example, the tone and content of the public statements of Assistant AG Stephen

Markman – the Department of Justice Official responsible for overseeing the Justice

Department office that directly counsels government agencies on their obligations under

FOIA – to federal government FOIA personnel obviously interfered with the Archive's

ability to obtain a favorable fee determination.  He stated:

> …what if an enterprise declares itself to be a Non-profit library and research facility," claims for itself the entitlement to a waiver of fees for its requests, and even seeks the shelter of tax exempt status?  And what if simultaneously with these professions of public service, it states its plan to receive a "thirty percent royalty" for copies of these documents obtained from the government with a full "public interest" waiver of FOIA fees?  Here you have the blueprint of The Archive's proposed operation."
>
> …
>
> …[d]oes this privileged "finder's fee" approach serve the "public interest"? [Sic]
>
> This scheme seeks a windfall at both ends, a free ride on top of a tax break, a subsidy to do business and exemption from payment of taxes on that business … In one fell swoop, the process of making FOIA requests has been transformed into a tax-sheltered activity!

Complaint, Exh. R at 12-18.  Assistant AG Markman's comments also reveal what

appears to be an impermissible basis for denying fees status requests by the Archive:

> Over 2000 [sic] FOIA requests were made by [the Archive to such agencies as the Departments of Defense and State between 1982 and 1984 alone.  You can well imagine the effect of these extraordinary numbers on FOIA processing.  The work often grinds to a halt.  Requests by others stall while the agency machinery shifts to accommodate such massive and incessant requests.

*Id.* at 14.  Nowhere in the fee waiver section of the FOIA is the administrative burden

*upon the government* a consideration in determining whether an organization is a member

of the news media.  Assistant AG Markman also suggested more sinister motivations for

the Archive in making its requests:

> Simply put [the Archive's] design for blanket requests to numerous agencies and components for national security information threatens to hobble the abilities of these agencies to respond consistently, prudently, and uniformly.  The danger is precisely that which has been recognized by the courts in upholding classification of seemingly innocuous bits of material – that if such information is pieced together, as in a mosaic, it may reveal a very sensitive larger picture… [T]here will always loom the

> specter of sensitive classified information inadvertently being disclosed as
> a result of so massive a barrage being aimed at national security agencies.

*Id.* at 16.

Finally, Assistant AG Markman's comments were reflected in the policy guidance that the Department of Justice's OIP issued to all federal FOIA officers.  In its *FOIA Update* publication it discussed both the dangers of disclosing sensitive information in the face of numerous Archive requests and the burden placed upon agencies.  Complaint, Exh. P.  It urges agencies to coordinate their efforts in responding to and dealing with Archive requests, but then, without any discussion at all of purported reasons why the Archive would not be entitled to fee waivers, says "[a]ny question regarding Armstrong-related requests or fee issues should be to OIP's fee and fee waiver specialist []."  Id. at 2 (emphasis added).  "Armstrong" refers to the Archive's then-Executive Director.  This referral of "Armstrong-related requests <u>or</u> fee issues" (emphasis added) clearly suggests an effort to use the fee status issue as a barrier to the Archive's successful pursuit of any FOIA requests.

On the record before the Court, the Archive is entitled to an award of attorneys' fees because it was forced to litigate the fee status issue due to the government's concerted attempt to obstruct the Archive's effort to obtain documents and benefit from FOIA's preferred fee status provisions.  Even were the Court to conclude that the government had a colorable basis in law for denying the Archive's fee status request, it is clear from the Court of Appeals' determination that the Archive is entitled to fee status as a representative of the news media that the government's legal conclusion was wrong, and so the inquiry does not end there.  The Court may then balance the reasonable basis in law against the three other factors discussed above.  *Chesapeake Bay Found'n v. U.S.*

*Dep't of Agriculture*, 11 F.3d 211, 216 (D.C. Cir. 1993) ("If the Government's position is correct as a matter of law, that will be dispositive.  If the Government's position is founded on a colorable basis in law, that will be weighed along with other relevant considerations in the entitlement calculus.").  Here, the three other factors – public benefit, lack of commercial interest, and nature of plaintiff's interest – all weigh heavily in favor of granting the fee request.

Accordingly, the Court should grant plaintiff's motion for attorneys' fees and costs.

4. **The Requested Fees and Costs Are Reasonable.**

Finally, as demonstrated in Plaintiff's Memorandum in Support of its Motion for Attorneys' Fees and Costs and its Reply to the Government's Opposition to its Motion for Attorneys' Fees and Costs, clear precedent and evidence of the prevailing market rate for litigating similar matters indicates that the requested fees and costs are reasonable.

Notably, the activity captured by the fee request took place over 14 years ago and the attorneys for the government and for the Archive were not involved in that litigation. At that time, the government did not challenge the number of hours, amount of effort, or costs expended by the Archive in the course of the litigation.  It focused its challenge only on the hourly rates claimed in this matter.  Accordingly, to the extent the government raises new challenges to the fees and costs claimed in the Motion, the Archive requests an opportunity to confer with the attorneys involved in the litigation and file an additional supplement to its Motion.

## CONCLUSION

For the foregoing reasons, and the reasons stated in Plaintiff's Memorandum in Support of Motion for Attorneys' Fees and Costs and its Reply to Defendant's

Opposition to Plaintiff's Motion for Attorneys' Fees and Costs, Plaintiff respectfully

requests that Plaintiff's Motion for Attorneys' Fees and Costs be granted.

     DATED: February 25, 2005

               Respectfully submitted,

               _____/S/_____
               Meredith Fuchs (D.C. Bar No. 450325)
               General Counsel
               The National Security Archive
               George Washington University
               Gelman Suite 701
               2130 H Street, NW
               Washington, DC   20037
               (202) 994-7059

               *Counsel for Plaintiff National Security Archive*