## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL SECURITY ARCHIVE,

      Plaintiff,

      v.                            Civil Action No. 86-3454 (JMF)

U.S. DEPARTMENT OF DEFENSE,

      Defendant.

## MEMORANDUM OPINION

This matter is before the Court on Plaintiff's Motion For Attorneys' Fees and Costs. Plaintiff, National Security Archive, moves for an award of attorneys' fees and costs, pursuant to 5 U.S.C. § 552(a)(4)(E),[1] for reimbursement of the fees expended to litigate this Freedom of Information Act ("FOIA") case against the United States Department of Defense. For the following reasons, the motion will be denied.

## BACKGROUND

The National Security Archive ("NSA") is a non-profit organization that collects and publishes information relating to national security and foreign policy issues. To accomplish its organizational mission, the NSA requests information from various departments of the federal government under FOIA. In 1986-87, the Archive asked the United States Department of Defense ("Department" or "DoD") to recognize that it was entitled to preferred fee status under FOIA as either an "educational institution" or a "representative of the news media." See 5 U.S.C. § 552(a)(4)(A)(ii)(II). If granted preferred fee status, the Archive would be eligible to obtain DoD documents for non-

---

[1] All references to the United States Code and to the Code of Federal Regulations are to the electronic versions that appear in Westlaw or Lexis.

commercial use without paying for the accompanying search and review costs.  Pursuant

to the regulations it had adopted governing fee-waivers, the DoD denied the Archive's

request.

After the request was denied, the Archive filed this action challenging the DoD's

fee-waiver decision under FOIA Amendments of 1986.  The Court granted summary

judgment for DoD, upholding the Department's determination that the Archive was

ineligible for fee-waiver status under 5 U.S.C. § 552(a)(4)(A)(ii)(II).  See Nat'l Sec.

Archive v. United States Dep't of Defense, 690 F. Supp. 17 (D.D.C. 1988) ("NSA I").

On appeal, the court of appeals reversed, holding that the Archive qualified for fee-

waiver status under FOIA.  While the court of appeals agreed with the Court's finding

that the Archive was not an educational institution, it held that the Archive qualified for

fee-waiver status as a representative of the news media.  See Nat'l Sec. Archive v. United

States Dep't of Defense, 880 F.2d 1381, 1382 (D.C. Cir. 1989) ("NSA II").  Subsequent

petitions by the DoD for a rehearing by the court of appeals and a petition for a writ of

certiorari to the Supreme Court of the United States were denied.  See United States

Dep't of Defense v. Nat'l Sec. Archive, 494 U.S. 1029 (1990).  Following the denial of

the petition for a writ of certiorari, the Archive filed the instant motion seeking attorneys'

fees and costs pursuant to FOIA's fee-shifting provision.  See 5 U.S.C. § 552(a)(4)(E).

**DISCUSSION**

**NSA Is Not Entitled to Attorneys' Fees**

I.      Introduction

This is an unusual case because NSA's success did not lead to any documents

being released.  Thus, there was no benefit to the public in the traditional sense of the

disclosure of documents pertaining to matters of public concern.  Instead, NSA established in this case that it was to be relieved of any obligation to pay the search costs for its FOIA requests.

II.      NSA's Position

NSA, a not-for-profit organization that subsists on grants from charitable foundations and other donors, Plaintiff's Supplemental Memorandum in Support of Its Request for Attorneys' Fees and Costs ("NSA Memo") at 10-11, is, as this case established, a news organization.  According to NSA, that it charges a fee to its readers for the materials it produces does not disqualify it because scholars and journalists need not forego their right to have their attorneys' fees paid by the government for securing FOIA documents that they then publish. Id. at 10 (quoting Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 35 (D.C. Cir. 1998)).

NSA insists that the decision it secured has enabled it to secure a greater number of  FOIA documents and to disseminate them more broadly than it would have been able to do had it not won this case. NSA Memo at 8.  Since the documents it publishes deal with governmental analysis and decisions in matters of national security and foreign relations, it views its victory as directly advancing FOIA's goals of disseminating materials bearing on matters of great public interest.

III.     The Government's Position

The government insists that NSA's being relieved of paying search costs did not benefit the public but only advanced NSA's own personal and commercial interests. According to the government, all NSA did was to obtain the right to shift the burden it would have had—to pay its own search fees—to the taxpayer.  The government reasons,

therefore, that awarding fees would have nothing to do with the central purpose of the attorney fees provision of FOIA: to lower the insurmountable burdens the average person faces in seeking information under FOIA. <u>Defendant's Supplemental Memorandum In Opposition to Plaintiff's Motion for Attorney Fees</u> ("Govt. Opp.") at 2-6.

IV.    <u>The Pertinent Factors</u>

The parties are agreed that the following four factors must be considered in ascertaining whether a plaintiff who has prevailed[2] is entitled to an award of fees: (1) the public benefit derived from the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's interest in the records; and (4) whether the government has a reasonable basis for withholding the requested information. Govt. Opp. at 3; NSA Memo. at 6.  "No single one of these factors is dispositive." NSA Memo at 6 (<u>citing</u> <u>Piper v. U.S. Dep't of Justice</u>, 339 F. Supp. 2d 13, 20 (D.D.C. 2004), <u>aff'd</u>, 222 Fed Appx 1, <u>cert. denied</u>, 128 S. Ct. 66 (2007).  Instead, "'[t]he sifting of those criteria over the facts of a case is a matter of district court discretion[.]'" Govt. Opp. at 3 (<u>quoting</u> <u>Tax Analysts v. U.S. Dep't of Justice</u>, 965 F.2d 1092, 1093 (D.C. Cir. 1992).

The second and third factors, commercial benefit to the plaintiff and the plaintiff's interest in the records, are closely related and often considered together. <u>Tax Analysts</u>, 965 F.2d at 1095.  Interestingly, because the only consequence of NSA's victory was being relieved of having to pay search fees, the first factor—the benefit to the public— coincides with the other two.  Hence, the government argues that there was no public benefit whatsoever in NSA being relieved of paying search costs; to the contrary, the only benefit was a financial or commercial benefit that NSA achieved for itself. Govt.

---

[2] Note that the government concedes that the plaintiff prevailed and is eligible for a fee award. Govt. Opp. at 3.

Opp. at 4-5.

V.      The Case Law

To the government, Chesapeake Bay Foundation v. Department of Agriculture, 108 F.3d 375 (D.C. Cir. 1997), is controlling because that case established that NSA's saving money is "not the type of benefit that merits a fee award." Govt. Opp. at 4.

In Chesapeake Bay, the court of appeals concluded that the only fruit of the plaintiff's victory—that it did not have to pay postage to mail certain documents—"is hardly a significant public benefit." Chesapeake Bay, 108 F.3d at 377.  But, that one sentence cannot support the propositions that only the disclosure of documents justifies a fee award and that a successful plaintiff's being relieved of a cost does not.  There is nothing in either the statute or its legislative history that warrants either absolute rule of prohibition.

Three other decisions illuminate the situation in this case much better than Chesapeake Bay.  They are: Fenster v. Brown, 617 F.2d 740 (D.C. Cir. 1979), Tax Analysts v. U.S. Dep't of Justice, 965 F.2d 1092 (D.C. Cir. 1992), and Peter S. Herrick's Customs & International Trade Newsletter v. U.S. Customs & Border Protection, No. 04CV377(JDB), 2006 U.S. Dist. LEXIS 77935 (D.D.C. Oct. 26, 2006) aff'd without opinion, No. 06-5427, 2007 U.S. App. LEXIS 12470 (D.C. Cir. May 24, 2007).

Fenster involved the long struggle of a law firm to secure certain documents under FOIA.  In that case, the court of appeals referred to its earlier decision in the same case, Cuneo v. Rumsfeld, 553 F.2d  1360 (D.C. Cir. 1977), and its discussion of the legislative history of the FOIA Amendments of 1974, Pub. L. 93-502, 88 Stat. 1561 (1974).  That history convinced the court that the existence of a private incentive to use

FOIA to secure documents would ordinarily defeat a claim for attorneys' fees.  As the

court indicated in Cuneo:

> If the potential for private commercial benefit was
> sufficient incentive to encourage [the appellant] to pursue
> his FOIA claim, the policy objectives of [the attorneys' fee
> provision,] section 552(a)(4)(E)[,] would be met and it
> would not be improper for the trial court to deny his request
> for attorney fees.

Cuneo, 553 F.2d at 1367.

In its second decision, Fenster, the court pointed to the admission by the law firm

that it brought the FOIA suit to help it counsel existing clients and attract new ones.

Fenster, 617 F.2d at 744.  Thus, based on the firm's disclosure that it sought a

commercial benefit from the FOIA suit, the court concluded that "[o]n these facts, 'the

private self-interest motive of, and . . . pecuniary benefit to, the complainant (is)

sufficient to insure the vindication of the rights given in the FOIA [without awarding

attorney fees].'" Id. (quoting S.Rep. No. 854, 93d Cong., 2d Sess. 1 (1974), reprinted in

House Comm. on Gov't Ops. & Senate Comm. on the Judiciary, 94th Cong., 1st Sess.,

Legislative History of the Freedom of Information Act Amendments of 1974, pt. 1, at

171 (Joint Comm. Print 1975)).

In Tax Analysts, the court of appeals, relying on its previous decision in NSA II,

held that the plaintiff, publisher of a weekly news magazine that reported on federal tax

law, was a news organization.  It also held however, that while Congress intended that

such organizations be treated favorably under the attorneys' fee provision, "we are aware

of nothing—and Tax Analysts offers nothing—that suggests that a litigant's status as a

news organization renders an award of attorney's fees *automatic*, or that such a status

renders irrelevant the news organization's other interests in the information." Tax

Analysts, 965 F.2d at 1096 (emphasis in original).  It then pointed to the language in

Fenster, quoted above, indicating that a private self-interest motive and pecuniary benefit

to the plaintiff were sufficient in themselves to motivate the plaintiff to vindicate its

rights under FOIA, thus eliminating any need to also award attorneys' fees. Id.  The

lower court conclusion that the news organization should not receive attorneys' fees "was

not prohibited by FOIA." Id.-

         Judge Bates of this Court reached the identical conclusion in Herrick.  The

plaintiff in that case was also a news organization, but Judge Bates, relying on Fenster

and Tax Analysts, concluded that there was nothing automatic about a news

organization's entitlement to attorneys' fees because it won a FOIA case.  To the

contrary, Judge Bates found that the FOIA disclosure would aid in leading people to a

website where they could buy a copy of the disclosure and learn about plaintiff's

counsel's law firm, whose name, address, and telephone numbers were prominently

displayed on the website.  Judge Bates therefore concluded that because the interests in

securing and publishing the FOIA disclosure "are overwhelming commercial and private

in nature, this case is one in which an entity that qualifies as a news organization is

nonetheless not entitled to an award of attorney fees." Herrick, 2006 U.S. Dist. LEXIS

77935, at *27.

         These cases specifically reject any notion that a news organization is ipso facto

entitled to attorney fees whenever it wins a FOIA case.  To the contrary, the

dissemination of the FOIA material secured for the public does not qualify for such fees

if there was a commercial motive or personal interest in securing the information.

         As noted above, NSA indicates that, but for its victory in this case, it would not

have been able to disseminate as much FOIA information as it has since its victory.

While, unlike the plaintiffs in these other cases, it is a not-for-profit, it nevertheless had a

powerful commercial and private motive to win the lawsuit—to defeat the government's

attempt to charge search fees in order to make NSA's retrieval of FOIA documents as

cheap as possible.  That powerful motivation sufficed to animate and justify what it did in

this lawsuit and, therefore, providing additional motivation to it by granting attorneys'

fees is inappropriate under the cases just discussed.  See LaSalle Extension Univ. v. FTC,

627 F.2d 481, 484 (D.C. Cir. 1980) (goal of FOIA attorneys' fees provision is to

encourages suits to enforce FOIA:  "This objective is not furthered here; parties such as

LaSalle who have a sufficient private interest in the requested information do not need

the additional incentive of recovering their fees and costs to induce them to pursue their

request in the courts.").

 Indeed, as NSA indicates, its publication costs over the intervening ten years

have been reduced because NSA has been relieved of paying search costs.  If that

reduction is greater than the attorneys' fees it seeks, NSA has already achieved an

economic benefit from this lawsuit.

Moreover, like any other entity in a market economy, NSA would have had to

pass its costs, including search fees, on to its buyers had it lost this lawsuit.  The question

would then be whether in 1986 the market would have borne the increased cost of the

publications because that cost would have included duplication *and* search costs.  There

is no showing whatsoever that the market would not have borne that increased cost.

Without that showing, NSA's claim that it would not have secured and published what it

has since its victory remains just that—a claim.  Indeed, NSA's claimed inability to stay

in business had it had to pay search fees underlines again how powerful a motivation it had to bring this lawsuit and how it would have brought this lawsuit whether or not it ever got its attorneys' fees.

Furthermore, even if this analysis is incorrect and there was some public benefit to NSA's victory[3] that was not overwhelmed by its commercial motive, what public benefit there may have been is outweighed by the refusal of NSA to attribute any significance to its losing one of its two legal claims and the reasonableness of the government's position.

## VI.    The Significance of NSA's Losing One Claim

NSA articulated two bases for being exempt from search fees—that it was an educational institution or that it was a representative of the news media. NSA II at 1383. Its argument that it was an educational institution failed in this Court and in the court of appeals.  Yet, NSA has not segregated the time it spent on the losing claim from the time spent on the winning one.  Indeed, it does not even offer some means of discounting the total fees it claims to allow for the time it spent on a claim that lost in both courts.  This failure is most likely in itself fatal to its claim.  As the court of appeals made clear in Judicial Watch v. U.S. Department of Commerce, 470 F.3d 363 (D.C. Cir. 2006), a litigant seeking fees under FOIA is subject, as is any litigant seeking fees under fee-shifting statutes, to the principle that when litigation involves more than one claim, "these unrelated claims [are to] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." Id. at 369 (quoting Hensley v. Eckerhart, 461 U.S. 424, 435 (1983)).  While there may be cases

---

[3] Note that NSA's argument regarding the importance of the precedent it established (NSA Memo at 7) is insufficient. Cotton v. Heyman, 63 F.3d 1115, 1120 (D.C. Cir. 1995).

where "claims for relief will involve a common core of facts," such that "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a "claim-by-claim basis," the court must still "focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id.

In this case, the two claims are easily segregated since NSA's claims that it should be relieved of paying searching costs are based on two phrases:  "news organization" and "educational institution," that have entirely different meanings and thus require that two entirely different arguments be made regarding the text of the statute and its legislative history.  While there was a core base of facts underlying both claims, each claim has a unique legal basis.  It is perhaps true that lawyers working on a case do not always anticipate losing one of the claims they assert; even the most experienced lawyer may view her client's chances with more optimism than they deserve. Nevertheless, that NSA did not keep records permitting it to segregate the time it spent on the winning claim from the time it spent on the losing claim can hardly be laid at the taxpayers' door.

 Moreover, NSA does not offer any principled way to compare the "significance of the overall relief it obtained" to the hours it expended by offering, for example, some reasonable discount.  Since it does not, awarding NSA its entire fee, and thus compensating it at least in part for time spent on a losing claim, would be an abuse of discretion under Hensely and Judicial Watch.

Indeed, it is the law that if the Government's position in a FOIA case "is correct as a matter of law, that will be dispositive." Chesapeake Bay, 11 F.3d at 216.  Fees must

be disallowed. Id.  Allowing fees to compensate NSA for time spent on a claim it lost

directly violates that prohibition.

VII.    The Reasonableness of the Government's Position

The government need only show that its position had a colorable basis in law.

Chesapeake Bay, 11 F.3d at 216.  It has done much more than that.

First, the government prevailed in both courts on one of its legal arguments and

prevailed on both arguments in this Court.  That the government prevailed in this Court is

most significant.  In Tax Analysts, the government prevailed in the district court, lost in

the court of appeals, and sought certiorari.   One justice dissented from the denial of the

government's petition for a writ of certiorari.  This case is identical but for the dissent.

As the court of appeals explained, to conclude that the government's position was not

reasonable would be to find that the district court opinion, upholding the government's

position, was unreasonable:

> Tax Analysts rebuts that our previous decision was
> unanimous, that only one Justice dissented in the
> Supreme Court, and that the dissent "did not
> even suggest that there was 'law' to support the
> government's argument," but rather that Congress could
> not have intended such a gross misuse of FOIA.  Although
> we agree that the government's position was weak,
> neither our unanimity nor the presence of only one
> dissent in the Supreme Court compels the
> conclusion that the government's position was baseless.
> Indeed, to accept Tax Analysts' argument would be to
> conclude that both Justice Blackmun's dissent and the
> district court's decision on the merits had no reasonable
> basis in law.  That we are unwilling to do.

Tax Analysts, 965 F.2d at 1096-97.

The government's case here is stronger than that case; it won on one of the two

issues in both courts.  The unanimity of the court of appeals on one issue and the refusal

of the Supreme Court to grant certiorari cannot lead in themselves to the conclusion that

the government's position had no reasonable basis in law.

Furthermore, as will now be shown, Judge Penn's decision, accepting the

government's arguments, cannot be condemned as unreasonable.

VIII.  <u>The Two Decisions</u>

"Under the [1986] Amendments [to FOIA], educational institutions whose

purpose is scholarly research, and representatives of the news media are entitled to the

waiver of search and review fees if they seek to obtain documents for non-commercial

purposes. 5 U.S.C. § (a)(4)(A)(ii)(II)." NSA I, 690 F. Supp. at 18.  Congress defined

neither "educational institutions" nor "representatives of the news media," but left it to

the agencies to define those terms.

DoD has defined the two terms as follows:

> The term "educational institution" refers to a preschool, a
> public or private elementary or secondary school, an
> institution of graduate higher education, an institution of
> undergraduate higher education, an institution of
> professional education, and an institution of vocational
> education, which operates a program or programs of
> scholarly research. . . .

> The term "representative of the news media" refers to any
> person actively gathering news for an entity that is
> organized and operated to publish or broadcast news to the
> public.  The term "news" means information that is about
> current events or that would be of current interest to the
> public.  Examples of news media entities include television
> or radio stations broadcasting to the public at large, and
> publishers of periodicals (but only in those instances when
> they can qualify as disseminators of "news") who make
> their products available for purchase or subscription by the
> general public. 32 C.F.R. § 286.33(e)(4) and (7).

<u>Id.</u> at 19.

Since Congress did not define either the words "educational institution" or "representative of the news media," Judge Penn looked to the legislative history to ascertain whether these regulations could be sustained as reasonable interpretations of the statute. Id. at 20.  He looked specifically to the statement of a co-sponsor of the amendments (Senator Orrin Hatch, R. Utah) that specifically indicated that entities like NSA were not to be permitted a status waiver but were to qualify, if at all, under the public interest exception found at 5 U.S.C. § 552(a)(4)(A)(iii).  Judge Penn stated:

> The remarks of Senator Hatch, a co-sponsor of the Amendments, strongly support the view that Congress did address the issue, and that it did not intend that entities like this plaintiff would obtain a waiver under 5 U.S.C. § 552(a)(4)(A)(ii).  See 132 Cong. Rec. S 14038, 14040 (daily ed. September 27, 1986). After noting that the fee waiver provision was taken from H.R. 6414, a bill introduced in the 98th Congress, Sen. Hatch stated that "we are removing the language '*nonprofit group that intends to make the information available*' to clarify that organizations seeking to establish private repositories of public records shall not qualify for a waiver." *Id*. (emphasis added). This language had been included in the provision which is now found at 5 U.S.C. § 552 (a)(4)(A)(ii)(II).  Arguably, the removed language describes plaintiff perfectly, and according to Sen. Hatch, the language was in fact removed to deny a "status" waiver to an entity like plaintiff. [4]
>
> **FOOTNOTES**
>
> **4** Senators Kerry and Leahy appear to discuss the statement of Sen. Hatch in a colloquy which is found at 132 Cong. Rec. S 16496 (daily ed. October 15, 1986).  In response to a query from Sen. Kerry regarding the scope of the waivers, Sen. Leahy states in part, "FOIA requesters engaged in the dissemination of information to the public -- and that of course is the primary function of libraries and repositories of public documents -- would qualify for waiver or reduction of fees under the

> FOIA." *Id*. The language in Sen. Leahy's response as a whole indicates that he was assuring Sen. Kerry that libraries and other repositories would qualify for waivers or reductions based upon the "public interest" provision in 5 U.S.C. § 552(a)(4)(A)(iii).
>
> While Sen. Hatch appears to have been in the minority among the sponsors in generally asserting a narrower reading of the Amendments, he certainly was not advocating the "losing" position in regard to the alteration of H.R. 6414. *Compare* 132 Cong. Rec. H 9463 (daily ed. October 8, 1986) (remarks of Rep. English) ("I am not in complete agreement with the Senate changes to [H.R. 6414]."). Given the deletion of express language that would have applied to plaintiff, the Court cannot conclude that Congress clearly intended to include an entity like plaintiff in the remaining categories in 5 U.S.C. § 552(a)(4)(A)(ii)(II).

<u>Id.</u> at 20-21 (footnote 3 omitted).

Judge Penn then stated:

> Since the Court cannot conclude that Congress clearly intended that an entity like plaintiff would be entitled to a waiver based upon its status, the Court should uphold DoD's decision not to consider plaintiff to be an educational institution or a representative of the news media if that decision is based upon a reasonable interpretation of the Amendments.

<u>Id.</u> at 21.

He then explained that DoD had apparently based the definition of "educational institution" on a definition adopted by the Department of Education for the purposes of Title IX of the Education Amendments of 1972. 20 U.S.C. § 1681 et seq. Accordingly, Judge Penn stated that, "[n]either the language of the statute nor the legislative history indicates that every entity which educates the public by making information available should be treated as an educational institution." <u>Id.</u>

14

He then turned to a statement in the legislative history that, according to NSA, displayed a clear intent to "treat disseminators of information as representatives of the news media." Id.  He noted, however, that the regulation's insistence that a representative of the news media regularly publish or broadcast news was reasonable.  Pointing once again to Hatch's statement, discussed earlier in his opinion, expressing an intention to exclude from the fee waiver a "'nonprofit group that intends to make the information available,'"[4]  Judge Penn concluded that Congress seemed to have rejected the very status waiver that NSA was seeking by trying to overturn the DoD regulations. Id.

On appeal, the court of appeals found that Hatch's statement, upon which Judge Penn relied, was countered by statements from other members of Congress and thus concluded that "[a]lthough the legislators were thus apprised of two different interpretations, they were apparently content to vote without resolving the dispute, thus punting the issue to the courts." NSA II, 880 F.2d at 1385.

Significantly, the court of appeals stated the following:

> Here, the floor statements of the cosponsors are in conflict. Senator Hatch explained, when the bill was initially presented to the Senate, that the elimination of the language covering entities that intend to make information available to others meant that the revised fee provisions "are not intended to permit a fee waiver to any requester simply on the basis of his status as a disseminator of public information. . . .  Of course, a true 'media' requester, in the traditional and common sense meaning of that term, should be treated otherwise, as is clearly provided for in the plain language of the bill." 132 Cong. Rec. S16505 (daily ed. Oct. 15, 1986).  Senator Leahy, on the other hand, indicated that he thought that "FOIA requesters engaged in the dissemination of information to the public -- and that of course is the primary function of libraries and private repositories of public documents -- would qualify for waiver or reduction of fees under the FOIA." 132 Cong.

---

[4] 690 F. Supp. at 20 (quoting 132 Cong. Rec. S14038, 14040 (daily ed. Sept. 27, 1986)).

Rec. S16496 (daily ed. Oct. 15, 1986).  He provided no explanation, however, for the deletion of the language that would clearly have applied to such entities.  *See id.*; 132 Cong. Rec. S14298 (daily ed. Sept. 30, 1986).  In the House, Representatives English and Kindness acknowledged the deletion of the relevant language, but contended that the deletion was without effect because Senator Leahy's statements, and their statements to the same effect, constituted the legislative history of the statute, and that "it is unnecessary, therefore, to amend the text of the bill since the intent has been so clearly stated." 132 Cong. Rec. H9463 (daily ed. Oct. 8, 1986).

In sum, the Senate amendment omitted the precise language of the earlier House bill that would have covered the Archive; one of the sponsors of the bill indicated that the omission was intended to change the meaning of the bill, and the others disagreed.  Although the legislators were thus apprised of the two different interpretations, they were apparently content to vote without resolving the dispute, thus punting the issue to the courts.  In this circumstance, we must fall back upon the conventional inference that a change in legislative language is not without effect; any other recourse would require the court to devise a defensible principle, for use when the sponsors' statements are "the only authoritative indications of congressional intent," by which to weigh the sponsors' conflicting statements -- but the Archive suggests none, and we do not see one.  We are left, then, with the sponsors of the bill in conflict; we cannot, therefore, rely upon any of their statements to supply a meaning that we do not find on the face of the statute when read as ordinary language.

Id.

Thus, both opinions indicate that Judge Penn and the court of appeals were confronted with a hopelessly unclear legislative history suggesting at one point, in a statement by Hatch, that Congress specifically intended to exclude a group like NSA from the fee waiver it was enacting.  The subsequent legislative history was enigmatic.  Leahy, a co-sponsor, disagreed with Hatch on the crucial question of whether a "disseminator of information" was entitled to a fee waiver.  To increase the confusion,

the two members of the House acknowledged the deletion of the phrase to which Hatch

pointed but insisted that Leahy's and their own statements clearly stated Congress's

intent.  In fact, as the court of appeals indicated, the legislative history was as clear as

mud.  It cannot possibly be said that Judge Penn's interpretation of that muddled

legislative history was unreasonable any more than was his deference to the DoD

regulations that on their face excluded NSA from the waiver.  Since that cannot be said, it

surely cannot be said that the government's arguments before Judge Penn, advancing

those propositions, were unreasonable.

IX.     The Obduracy of the Government

        NSA devotes little of its submission to the reasonableness of the government's

position but instead portrays the government as acting with the recalcitrance and

obduracy that the courts have condemned and found to warrant the imposition of fees.

See Cuneo, 553 F.2d at 1366 (district court must consider whether government had a

reasonable basis in law for its position and "that it had not been recalcitrant . . . or

otherwise engaged in obdurate behavior").

        NSA indicates that this case began with the articulation of the policy of the United

States by Stephen Markman, who was then Assistant Attorney General.  Markman

publicly stated his opposition to a non-profit organization that was in the business of

deseminating FOIA information from being relieved of paying search fees, and caused all

concerned federal agencies to take a uniform position when NSA sought the waiver of

search costs. NSA Memo at 11-13.  That position obviously led to this lawsuit.

        As to Markman's statement, it can only be said that one man's obdurate

recalcitrance may be another man's enviable persistence and integrity.  Markman thought

it improper that a tax-free entity should be able to shift the costs of FOIA searches from itself to the taxpayers and that its ability to do so might result in the improper disclosure of confidential information.  He then demanded that all government agencies take the same position, universally denying waivers to NSA.  The Department of Justice then advanced its position, prevailing completely in the lower court but losing in the court of appeals.  It is unfair and unreasonable to equate the government's behavior in taking a certain position on a recently enacted statute with an ambiguous legislative history and in insisting that all agencies speak with one voice to the kind of behavior that the judges of this Court have condemned as obdurate and recalcitrant.  E.g., Judicial Watch v. Dep't of Commerce, 384 F. Supp. 2d 163, 169 (D.D.C. 2005) ("In addition to the four factors just considered, the Court also considers its previous conclusions that DOC's initial search was unlawful and egregiously mishandled and that likely responsive documents were destroyed and removed.  If the four factors by themselves did not weigh in favor of a fee award, surely DOC's past behavior—demonstrating its lack of reasonableness and lack of respect for the FOIA process—would tip the balance in favor of an award.") aff'd in part, rev'd in part, Judicial Watch, 470 F.3d at 363 (D.C. Cir. 2006); Piper, 339 F. Supp. 2d at 21 (fees awarded when government stated that document could not be found despite precise description; incident whether blunder or subterfuge "is the kind of recalcitrant and obdurate conduct" that requires government to pay fees); Playboy Enters., Inc. v. U.S. Customs Serv., 959 F. Supp 11, 17 (D.D.C. 1997) (government's claim that position was reasonable because no case law contradicting it; "The reason there may be no contrary case law is because the position is so devoid of any merit there is no need for the case law to have developed a precedent in this area.").  Compare People for the Ethical Treatment

of Animals v. U.S. Dept. of Agriculture, No. 03CV195(SBC), 2006 U.S. Dist. LEXIS 10517, at *15 (D.D.C. March 1, 2006) (court denied fees when government's partial loss on cross-motions for summary judgment "resulted from errors in legal judgment and perhaps blunder, but not from subterfuge" and therefore agency had colorable basis for its position). I cannot possibly equate the government's behavior in this case with the behavior condemned in those cases.

## CONCLUSION

I have weighed the pertinent factors and conclude that NSA was motivated by a commercial and personal motive to achieve the victory that it did, and that whatever public benefit resulted from NSA's victory in this case is overwhelmed by the obvious reasonableness of the government's legal arguments. I also find that NSA's inability to segregate the time spent on the claim it won from the time spent on the claim it lost militates against the award of fees it seeks.

An Order accompanies this Memorandum Opinion.


Date: January 15, 2008              _____/S/_____
                                    JOHN M. FACCIOLA
                                    UNITED STATES MAGISTRATE JUDGE